## (C.D. 3851)

### HENRY A. WESS, INC. *v.* UNITED STATES

### United States Customs Court, Second Division

(Decided June 23, 1969)

*Allerton deC Tompkins* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Charles P. Deem, Andrew P. Vance*, and *Steven R. Sosnov*, trial attorneys), for the defendant.

#### Before RAO and FORD, Judges

FORD, Judge: These protests place in issue the tariff classification of certain jewelry boxes imported from Italy. The merchandise covered by two of the three protests herein was classified as articles in chief value of synthetic textile or rayon pile fabric pursuant to paragraph 1307, Tariff Act of 1930, as modified, *infra*, and assessed with duty at the compound rate of 15 cents per pound and 25 per centum ad valorem. The merchandise covered by the remaining protest was classified as manufactures in chief value of rayon or synthetic textile, not specially provided for, pursuant to paragraph 1312 of said act, as modified, *infra*, and assessed with duty at the compound rate of 25 cents per pound and 30 per centum ad valorem.

Plaintiff places in issue the component of chief value in these importations and claims that with regard to those items said to be in chief value of wood the provision which should govern is paragraph 412 of the Tariff Act of 1930, as modified, *infra*, which paragraph provides for manufactures of which wood or bark is the component of chief value and assesses a duty of 16⅔ per centum ad valorem.

As regards those items which plaintiff contends are in chief value of plastic, plaintiff claims classification by similitude to articles governed by the above mentioned paragraph 412 or boxes governed by various provisions of paragraphs 1405 and 1413. The relevant statutory provisions read as follows:

## CLASSIFICATIONS

Paragraph 1307, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

> Pile fabrics (including pile ribbons), whether or
> not the pile covers the entire surface, wholly or
> in chief value of rayon or other synthetic tex-

tile, and all articles, finished or unfinished, made
or cut from such pile fabrics; all the foregoing,
whether the pile is wholly cut, wholly uncut, or
partly cut_____ 15¢ per lb.
and 25%
ad val.

Paragraph 1312, Tariff Act of 1930, as modified by the Sixth Proto-
col of Supplementary Concessions to the General Agreement on Tar-
iffs and Trade, T.D. 54108:

Manufactures of filaments, fibers, yarns, or
threads, of rayon or other synthetic textile, and
textile products made of bands or strips (not
exceeding 1 inch in width) of rayon or other
synthetic textile, all the foregoing, wholly or in
chief value of rayon or other synthetic textile,
not specially provided for (except gill nets
or netting)_____ 25¢ per lb.
and 30%
ad val.

## CLAIMS

Paragraph 412, Tariff Act of 1930, as modified by the Annecy Pro-
tocol to the General Agreement on Tariffs and Trade, T.D. 52373:

Manufactures of wood or bark, or of which wood
or bark is the component material of chief value,
not specially provided for:
\*         \*         \*         \*         \*         \*         \*
Other _____ 16⅔% ad val.

Paragraph 1405, Tariff Act of 1930, as modified by the Sixth Pro-
tocol of Supplementary Concessions to the General Agreement on
Tariffs and Trade, T.D. 54108:

Boxes of paper or papier-mache or wood, covered
or lined with cotton or other vegetable fiber_____ 2¢ per lb. and
8½%
ad val.

Paragraph 1405, Tariff Act of 1930, as modified by the Torquay
Protocol to the General Agreement on Tariffs and Trade, T.D. 52739:

Boxes of paper or papier-mache or wood provided
for in paragraph 1405, Tariff Act of 1930:
Covered or lined with paper but not cov-
ered or lined with cotton or other vege-
table fiber_____ 2½¢ per lb.
and 5%
ad val.

Paragraph 1413, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

> Boxes, composed wholly or in chief value of paper, papier-mache or paper board, and not specifically provided for_____ 17½% ad val.

Paragraph 1413, Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, T.D. 52373 and T.D. 52462:

> Manufactures of paper, or of which paper is the component material of chief value, not specially provided for (except ribbon fly catchers or fly ribbons) _____ 17½% ad val.

Paragraph 1559, Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, 68 Stat. 1137:

> (a)  Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

For ease of discussion the importations involved herein will be set forth below and each one assigned an article number by which it will be referred to in this decision.

Protest 61/8781—Invoice No. 481

| Article No. | Invoice Item No. | Invoice Description |
|---|---|---|
| 1 | 1480 | Displays for 1 gent's ring |
| 2 | " | "    " 1 lady's ring |
| 3 | " | "    " 2 lady's rings |
| 4 | " | "    " 2 gent's rings |
| 5 | " | "    " pendant |
| 6 | " | "    " earrings, screw fitting |
| 7 | 1600 | "    " 1 gent's ring |
| 8 | " | "    " 1 lady's ring |
| 9 | " | "    " 2 lady's rings |
| 10 | " | "    " 3 rings (2 lady's 1 gent's) |
| 11 | " | "    " pendant |
| 12 | " | "    " earring with screw |

Protest 63/17417—Invoice No. 294

| Article No. | Invoice Item No. | Invoice Description |
|---|---|---|
| 13 | 9956/A | Large ring boxes with slot 58 x 50 |
| 14 | 13146 | Tie-tack boxes |
| 15 | 9958 | Bracelet boxes 250 x 60 |
| 16 | 9955 | Large ring boxes with tongue 53 x 59 mod. 7 |
| 17 | 9960 | Brooch boxes |
| 18 | 9957 | Bracelet boxes 230 x 50 mod. 7 |
| 19 | Gannet | Necklace boxes |
| 20 | 9959 | Cuff link boxes 100 x 80 mod. 7 |
| 21 | 6370 | Pendant boxes |
| 22 | 9963 | Watch boxes with collar |
| 23 | 9961 | Pendant boxes |
| 24 | 6370 | "          " |
| 25 | 2998 | Utility boxes |

Protest 61/22459—Invoice No. 163

| Article No. | Invoice Item No. | Invoice Description |
|---|---|---|
| 26 | 80131/E | Ladies watch box "Long Baguette" |
| 27 | 80132/E | Long gents watch box 250 x 58 mm |
| 28 | 8041/E | Brooch boxes 100 x 80 mm |
| 29 | 8071/E | Pendant boxes 10 x 8 cm |
| 30 | 8084/E | Pearl necklace boxes 210 x 120 mm |
| 31 | /E | Brooch boxes 115 x 90 mm |
| 32 | 8011/E | Ring boxes with tongue |
| 33 | 80113/E | Ladies watch boxes with collar |
| 34 | 8058/E | Cuff link boxes and earring boxes |
| 35 | 1000/E | Ring boxes with slot |
| 36 | /E | Utility boxes 220 x 140 mm |

The record herein consists of the testimony of Mr. Max Litwin, vice president of Litwin & Sons, Inc., for whom the instant importations were made, and Mr. James F. Jedlicka, appraiser of the merchandise in question and, in response to written interrogatories, the answers of Giorgio Becucci, co-owner of the manufacturer.

Mr. Litwin testified that the instant importations were jewelry boxes used as containers in which to place jewelry sold to customers or for display purposes. His testimony regarding the composition of the boxes derived entirely from his reliance on the invoice descriptions and hence is accorded no weight herein. During the course of his testimony, four exhibits were introduced in evidence as examples or illustrations of those at issue; plaintiff's exhibit 1 representing article No. 29, plaintiff's exhibit 2 representing article No. 35, plaintiff's illustrative exhibit

3 representing article No. 17, and plaintiff's illustrative exhibit 4 representing article No. 22.

Plaintiff's exhibit 5 consists of a commission of this court to the American consul in Bologna, Italy, to examine the manufacturer of the instant merchandise pursuant to written interrogatories, a copy of the interrogatories, and the manufacturer's replies thereto. Plaintiff's exhibit 6 consists of the interrogatories and answers arranged *seriatim*.

The interrogatories call for information relevant to the period in question regarding the position and duties of the deponent, the business of the manufacturer, the familiarity of the deponent with the importations, the nature, quantity and cost of their components, and the grounds for such familiarity. The deponent was requested to prepare a schedule of the items set forth, *supra*, showing in separate columns, the identity of the items, materials used in their manufacture, cost thereof to the manufacturer, cost of further manufacturing and processing, and total costs.

In reply, Mr. Giorgio Becucci stated that during the period in question he was co-owner of the manufacturer and responsible for production and administration. He was familiar with the items sold to Litwin by virtue of having conducted the negotiations and was able to identify the materials used in each item and the costs thereof by reference to the "notations" of his "cooperators." He appended a schedule prepared in the form demanded by the interrogatories. In keeping with the instructions of the interrogatories, costs which were deemed negligible were not placed in the cost columns.

The schedule does not deal responsively with articles numbered 4 through 12, and article numbered 19. There being no evidence as to their composition and the value thereof the protests, insofar as they relate to these articles, are overruled.

The remaining information on the schedule indicates that articles numbered 1, 2, 3, 16, 18, 26, 32, and 33 are in chief value of plastic and that articles numbered 13, 14, 15, 17, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 34, 35, and 36 are in chief value of wood.

Completing the record in this case is the testimony of James F. Jedlicka who was the appraiser of the instant merchandise. Mr. Jedlicka testified that due to lack of clarity in the invoice statements he checked a sample of each of the different kinds of jewelry boxes in the shipments and found no plastic shells. He further stated that some of the shells were made of wood and some of cardboard.

An examination of plaintiff's claims herein must focus on three principal matters; first, the weight to be given to the manufacturer's responses; second, the evidence adduced with respect to those boxes purportedly in chief value of wood; and third, the evidence adduced with respect to those boxes purportedly in chief value of plastic.

Defendant, although it introduced no evidence regarding cost figures attacks the manufacturer's responses set forth above and argues that they should be given no probative weight since the source of Mr. Becucci's figures is unclear. As noted, Mr. Becucci based his information on "notations" of his "cooperators." It was agreed between the parties that "cooperators" means employees. The meaning of "notations" however remains in dispute, plaintiff suggesting that it should be taken to mean the ordinary business records and defendant stressing the ambiguity inherent in the word and the possibility that the notations referred to were not regular business records and were not contemporaneous with the period of manufacture.

It is fundamental in the law that a witness must be qualified to testify regarding the matter in question and that such qualification, except in the case of expert witnesses, must be based on some form of observation of the particular transactions in question. See generally Wigmore On Evidence, Vol. II, sec. 650, *et seq*. The exigencies and complexities of modern commercial and governmental activity together with the trustworthiness which experience has assigned to certain forms of record keeping have combined to bring about the acceptance of testimony which is not based on the personal observation of a witness and recognition that qualifications of a witness may be grounded in familiarity with the records of a transaction rather than the transaction itself.

Thus, in modern litigation the records made in the regular course of a business are admissible as evidence of the events they record. See 28 U.S.C.A., sec. 1732. Similarly, a witness such as a manufacturer may testify to details and minutiæ which he could not possibly have observed directly if his testimony is based on material which was prepared under his control or supervision and constituted the regular records made in the ordinary course of business.

In all cases, the court must be satisfied that the evidence offered, be it direct or indirect, derives in unbroken continuity from the time and place of the events in question. See generally, *United States* v. *Philipp Wirth et al.*, 24 CCPA 188, T.D. 48654 (1936). This is particularly important when, as here, the witness is testifying regarding detailed matters which are not derived from his direct observation. When such complete reliance is placed on the source of information it is incumbent upon the party offering such evidence to demonstrate that the source material is completely worthy of reliance. While we are inclined to view favorably the detailed responses of deponent we are not provided sufficient grounds for accepting the accuracy of the material on which he relies as deriving from regular business records.

Had this been a case involving a witness present in court, the ambiguity could have been dispelled quickly. Since, however, we are

dealing with the responses of a foreign manufacturer to written interrogatories, which responses are at the crux of plaintiff's proof, this case cannot proceed to the disposition on the merits which detailed evidence would ordinarily warrant and which fairness to the parties ordinarily demands.

Although we would be justified in dismissing these protests at this time, we believe that the interests of justice would best be served by a clarification of the source of deponent's information which, if it proves sound, will permit full consideration of the component of chief value and a disposition on the merits. Accordingly, except for those items concerning which the protests have been dismissed we restore this case to the calendar for the sole purpose of clarifying the source of deponent's information regarding the nature and cost of the various components.

Judgment will be entered accordingly.